United States District Court
Southern District of Texas
FILED

MAY 3 1 2002

Michael N. Milby
Clerk of Court

AO 243 (Rev. 5/85)

## MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District SOUTHERN DISTRICT OF TEXAS, BROWNSVILLE | |
|---|---|---|
| Name of Movant **MARCOS GONZALEZ** | Prisoner No. **65613-079** | Case No. **B94-00095-01** |
| Place of Confinement **FCI (MEDIUM) BEAUMONT, TEXAS 77720** | **B-02-116** | |

UNITED STATES OF AMERICA        V.        **MARCOS GONZALEZ**
(name under which convicted)

## MOTION

1. Name and location of court which entered the judgment of conviction under attack **UNITED STATES DISTRICT COURT, BROWNSVILLE, TEXAS**

2. Date of judgment of conviction __**March 31, 1995**__

3. Length of sentence __**300 months, (count 2) and 240 months in count 4**__

4. Nature of offense involved (all counts) __**Conspiracy to possess with intent to distribute cocaine (count 2); Attempt to conduct a financial transaction with proceeds of unlawful activity (count 4)**__

5. What was your plea? (Check one)
   (a) Not guilty ☐
   (b) Guilty ☒
   (c) Nolo contendere ☐

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:
   __**N/A**__

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury ☐
   (b) Judge only ☐        **N/A**

7. Did you testify at the trial?
   Yes ☐ No ☒

8. Did you appeal from the judgment of conviction?
   Yes ☐ No ☒

AO 243 (Rev. 5/85)

9.  If you did appeal, answer the following:

    (a) Name of court _____ **FIFTH CIRCUIT COURT OF APPEALS** _____

    (b) Result _____ **AFFIRMED** _____

    (c) Date of result _____ **DECEMBER 21, 1995** _____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications or motions with respect to this judgment in any federal court?
Yes ☐ No **XX**

11. If your answer to 10 was "yes," give the following information:

    (a) (1) Name of court _____ **U.S. DISTRICT COURT, BROWNSVILLE** _____

    (2) Nature of proceeding _____ **28 U.S.C. § 2255 MOTION** _____

    (3) Grounds raised _____ **N/A** _____

    (4) Did you receive an evidentiary hearing on your petition, application or motion?
    Yes ☐ No **XX**

    (5) Result _____ **DISMISSED WITHOUT PREJUDICE** _____

    (6) Date of result _____

    (b) As to any second petition, application or motion give the same information:

    (1) Name of court _____

    (2) Nature of proceeding _____

    (3) Grounds raised _____

AO 243 (Rev. 5/85)

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☐

**N/A**

(5) Result_____

(6) Date of result _____

(c) Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?
(1) First petition, etc.        Yes ☐ No ☐
(2) Second petition, etc.        Yes ☐ No ☐

(d) If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

__MOTION WAS DISMISSED WITHOUT PREJUDICE TO REFILING__

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

12. State *concisely* every ground on which you claim that you are being held in violation of the constitution, laws or treaties of the United States. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

CAUTION: If you fail to set forth all ground in this motion, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you based your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any one of the grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.

AO 243 (Rev. 5/85)

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impanelled.

(i) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

A. Ground one: __WHETHER THE DISTRICT COURT VIOLATED CORE__

__CONCERN OF RULE 11, FED. R. CRIM. P.__

Supporting FACTS (state *briefly* without citing cases or law) _____

_____ (SEE ATTACHED MEMORANDUM MADE A PART OF THIS MOTION)

_____

_____

_____

_____

B. Ground two: __WHETHER THERE WAS A FACTUAL BASIS TO ACCEPT__

__GONZALEZ' GUILTY PLEA TO %&¢ KILOGRAMS OF COCAINE__

Supporting FACTS (state *briefly* without citing cases or law): _____

__(SEE ATTACHED MEMORANDUM MADE A PART OF THIS MOTION)__

_____

_____

_____

_____

C. Ground three: __WHETHER FACTUAL BASIS EXIST ON THE RECORD TO__

__ACCEPT GONZALEZ'S GUILTY PLEA TO MONEY LAUNDERING.__

Supporting FACTS (state *briefly* without citing cases or law): _____

__(SEE ATTACHED MEMORANDUM MADE A PART OF THIS MOTION)__

_____

_____

AO 243 (Rev. 5/85)

D. Ground four:   WHETHER GONZALEZ WAS DENIED EFFECTIVE ASSISTANCE OF
COUNSEL IN VIOLATION OF HIS SIXTH AMENDMENT RIGHT

Supporting FACTS (state *briefly* without citing cases or law):

  (SEE ATTACHED MEMORANDUM MADE A PART OF THIS MOTION)

13. If any of the grounds listed in 12A, B, C, and D were not previously presented, state briefly what grounds were not so
presented, and give your reasons for not presenting them:

THIS IS THE INITIAL § 2255 MOTION BECAUSE THE FIRST WAS DISMISSED

WITHOUT PREJUDICE

14. Do you have any petition or appeal now pending in any court as to the judgment under attack?
Yes ☐ No **XX**

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked
herein:

(a) At preliminary hearing     OOSCAR De La FUENTE, 134 E. PRICE ROAD,

 BROWNSVILLE, TEXAS 78521

(b) At arraignment and plea                     SAME

(c)At trial                                       NONE

(d) At sentencing                              SAME

AO 243 (Rev. 5/85)

(e) On appeal_____**OSCAR DE LA FUENTE**_____

_____

(f) In any post-conviction proceeding _____**NONE**_____

_____

(g) On appeal from any adverse ruling in a post-conviction proceeding _____

_____**N/A**_____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?
Yes ☒ No ☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐ No ☒

(a) If so, give name and location of court which imposed sentence to be served in the future: _____

_____**N/A**_____

(b) Give date and length of the above sentence: _____

_____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐ No ☐

**N/A**

Wherefore, movant prays that the Court grant him all relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

**5 - 28 - 02**
_____
(date)

*Marcos R. Frenzely*
_____
Signature of Movant

IN THE

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF TEXAS

BROWNSVILLE DIVISION


UNITED STATES OF AMERICA,              §
                Respondent,
                          §
                          §   CASE NO. B-94-095
VS.
                          §

MARCOS GONZALEZ,
                Movant.      §


MEMORANDUM IN SUPPORT OF MOTION PURSUANT
28 U.S.C. SECTION 2255 TO VACATE SET
ASIDE OR CORRECT SENTENCE FOR A
PERSON IN FEDERAL CUSTODY

TO THE HONORABLE UNITED STATES DISTRICT COURT:

      **Comes now,** Marcos Gonzalez, movant, hereinafter, and files this pro se Memorandum with points of law in support of his Motion to ~~to~~ vacate, set aside or correct sentence for a person in federal custody, respectfully showing the following to this Honorable Court.:

### JURISDICTION

      This Court's jurisdiction is evoked pursuant to 28 U.S.C. §2255 and the rules applicable thereto, subject matter jurisdiction ensued under Title 21 U.S.C. §§841(a)(1), 846 and 18 U.S.C. §1956(a)(1)(2).

### ISSUES PRESENTED FOR REVIEW

1.  WHETHERTHE DISTRICT COURT VIOLATED CORE CONCERNS OF RULE 11 WHERE THE COURT FAILED TO ADVICE GONZALEZ OF THE TRUE NATURE OF THE CHARGES TO WHICH HIS PLEA WAS TENDERED

1.

2.  **WHETHER THERE WAS A FACTUAL BASIS TO ACCEPT GONZALEZ'S GUILTY PLEA TO 576 KILIGRAMS OF COCAINE**

3.  **WHETHER FACTUAL BASIS EXIST ON THE RECORD TO ACCEPT GONZALEZ'S GUILTY PLEA TO MONEY LAUNDERING INVOLVING $11,200.**

4.  **WHETHER GONZALEZ WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED HIM BY THE SIXTH AMMENDMENT OF THE UNITED STATES CONSTITUTION**

## STATEMENT OF THE CASE

The movant in this case, Marcos Gonzalez was indicted under a sealed indictment issued on June 9, 1994, in the Southern District of Texas, Brownsville Division, CR-B-94-95, charging Conspiracy to possess with intent to distribute in excess of 5 Kilograms of cocaine, specifically, 576 kilograms of cocaine in violation of 21 U.S.C. §846, §841(a)(1 and (b)(1)(A) (Count One); with aiding and abetting the possession with intent to distribute in excess of 5 kilograms of cocaine, specifically, 576 kilograms of cocaine in violation of 21 U.S.C. §§841(a)(1), 841(b)(1)(A), 18 U.S.C. §2 (Counts 2 and 3) respectively; and with aiding and abetting money laundering, specifically, $11,200, in violation of 18 U.S.C. §1956(a)(1)(A) and 2 (Counts 4). The indictment was unsealed on August 26, 1994.

Marcos Gonzalez was arraigned on November 28, 1994, and was represented by counsel, Oscar De La Fuente, Jr., who was appointed by the court on November 30, 1994. In December, 1994, counsel filed pretrial discovery motion. On January 5, 1995, Gonzalez moved for a continuance based on counsel's need for more time to review the voluminous information and document provided by the government. At the pretrial hearing

conducted on January 5, 1995, Gonzalez's counsel stated that he viewed the case as complex and the material voluminous, that he had not had time to review all of the    documents . The district court denied his motion for continuance without further discussion.

On January 6, 1995, the jury was selected for trial but was not even sworn on this date. Trial commenced on January 13, 1995. On the third day of the trial, after counsel concluded that he was not prepared for trial, he advised Gonzalez to enter a guilty plea  to some of the charges in exchange for dismissal of others. Gonzalez's arraignment proceeded where he entered a guilty plea to Counts 2 and 4 of the indictment.

At the sentencing, the Court found the applicable guideline to be level 40 resulting in a category range 292-365 months imprisonment. On March 31, 1995, the Court imposed a sentence on Count 2 at 300 months and Count 4 at 240 months in the custody of the Bureau of Prisons, five years supervised release on Count 2 and three years supervised release on Count 4 to be served concurrently and an aggragate $100 special assessment fee.

## STATEMENT OF FACTS

In March, 1992, an independent investigator by the Drug Enforcement Adminstration (DEA) in Brownsville, Texas, revealed information from a confidential source that Marcos Gonzalez was operating a drug trafficking organization to move cocaine from Harlingen/Brownsville to Houston and then ultimately to New York for distribution. With regard to Count

3.

2 of the indictment, the confidential informant advised in December 1991, Gonzalez received a 576 kilograms shipment of cocaine at a warehouse in College Point, New York. DEA agents in New York verified that the warehouse in fact existed, that a crate bearing the stenciled name, **"Star Transmission"** had been received there on December 14, 1991, and that the bills of lading showed the shipment was sent from a Houston warehouse address. Nothing in the record showed that Gonzalez was present at the warehouse or that drug was ever present in the warehouse. At the trial, Gonzalez objected to the introduction of the theory of the 576 kilograms of cocaine as improper hearsay. The district court sustained the objection. **(Trial TR. at p. 193-194).**

The agents continued their investigation of **"Star Transmission"** and were alerted by the freight company when a suspected drug transportation was made. In September, 1992, the agents discovered a Houston warehouse where 387 pounds of marijuana was seized. Three arrests were made as a result thereto in Harlingen, Texas. Some locations were marked by the agents as informed that these locations were being used for drug vehicles (one of which bore Mexican Plates) leave the warehouse and travel to Brownsville. Once there, persons from one vehicle were observed throwing bags into a dumpster. The agents recovered the trash and the material contained therein tested positive for cocaine. Crates at the warehouse containing cocaine were discovered, opened and sealed by the agents on October 12, 1992. The next day, the agents observed individuals arriving/leaving the warehouse and confiscated

**4.**

approximately 780 kilograms of cocaine from one of their vehicles. Following a subsequent search of the warehouse, they recovered approximately 70 kilograms.

The Harlingen warehouse had been rented by Benito Gonzalez, III, and his wife, Sandra Avila-Vasquez (a/k/a/ Sonia Garza). Benito is defendant Gonzalez's brother. As alleged in Count 4 of the indictment, during the period of April 30, 1991 to August, 1992, Sandra Avila paid $13,225 to the realty company. Of this, $11,225 was paid with currency and money orders.

### ARGUMENTS AND POINTS OF LAW

**WHETHER THE DISTRICT COURT VIOLATED CORE CONCERNS OF RULE 11 WHERE THE COURT FAILED TO ADVICE GONZALEZ OF THE TRUE NATURE OF THE CHARGES TO WHICH HIS PLEA WAS TENDERED**

Gonzalez asserts that this Court failed to comply with the Fed. R. Crim. P. 11 in accepting his guilty plea. As the record of the plea colloquy demonstrates, this Court failed to meet the objectives of Rule 11 in several instances.

Under Rule 11(c)(1), before accepting a guilty plea, the Court must address the defendant personally in open court and inform the defendant of **"the nature of the charge** ~~xxxk~~ **to which the plea is offered". Fed. R.Crim. P. 11(c)(1). UNITED STATES VS. MARTIROSION**, 967 F2d 1036, 1038 (5th Cir. 1992). In assessing whether the district court adequately informed a criminal defendant of the nature of the charge against him, Courts have emphasized that no **"simple or mechanical"** rule may be applied and that the level of inquiry required to satisfy Rule 11(c)(1) varies from case to case depending on

5.

the relative difficulty of comprehension of the charges and
of the defendants sophistication and intelligence. See **UNITED
STATES VS. GARCIA-GARCIA**, 939 f2d 230 (5th Cir. 1991). For
simple charges, for example, a reading of the indictment,
followed by an opportunity given the defendant to ask
questions about it, will usually surface. **UNITED STATES VS.
DAYTON**, 604 F2d 931, 938 (5th Cor. 1979). More complex
charges, as in this case, may require more explanatory,
including in some cases an explanation of the elements of the
offense similar to that given the jury in its instructions.

The Fifth Circuit, in deciding whether the district
court adequately ensured that a defendant understand the
nature of the charge, assess the decision on a case by case
basis. **UNITED STATES VS. JOHNSON**, 983 F2d 33 (5th Cir. 1993).
See also **UNITED STATES VS. MOSLEY**, 173 F3d 1318, 1324 (11th
Cir. 1996) (**"To decide whether defendant understands the
nature of the charge to which [s]he is pleading, we
must...affirm the district court if the record provides a
basis for the Court's finding that the defendant understand
what [s]he was admitting and that what [s]he was admitting
constituted the crime charged.**

In this case, Gonzalez argues that this Court failed
adequately to ensure that he understood the nature of the
charge to which he was pleading guilty because this Court's
explanation failed to account for the elements of the charged
offense and indeed, put Gonzalez in absloute confusion. The
transcript of the plea colloquy will show that Gonzalez was
left irretrievably at the hearing to scramble for an

**6.**

understanding of the crime he was charged at the commencement of the plea collquy, and in deviation from the command of Rule 11(c)(1), this Court questioned Gonzalez of his understanding of the charges in Count 2 of the indictment without first advising him of the charge in accordance with the dictate of Rule 11(c)(1) **(Plea Tr. at p. 5)** Gonzalez demonstrated a misunderstanding of the charge against him by telling the Court that he was charged with, **"on 576 kilos" "of coke"**. The record is clear that this Court engaged Gonzalez on a colloquy concerning **"coke"** while the government arraigned him on **"cocaine". (Plea Tr. at p. 5)**.

Based on the apparent ambiguity of the nature of the charge, these confused statements undermined any conclusion that Gonzalez understand the nature of the charge to which his plea was offered. **UNITED STATES VS. SUAREZ**, 155 F3d 521, 524 (5th Cir. 1998). In light of Gonzalez's response at the rearraignment hearing, it is evident that this Court failed to determine whether he understood the nature of the charge and also erred by accepting his guilty plea without first clarifying this important matter. **Suarez, 155 F3d at 525.**

In **UNITED STATES VS. ORTEGA**, 148 F3d 540, 543 (1998), the Fifth Circuit noted there are three elements to possession with intent to distribute cocaine: **(1)** Knowing **(2)** Possession of the drugs in question **(3)** With intent to distribute them. A search of the record of Gonzalez plea colloquy transcript will reveal that this Court made no attempt to explain these elements to Gonzalez or even to ascertain the level of education he acquired. A defendant's level of comprehension can be

7.

determine if the Court would elicit such information during a plea colloquy. No doubt, under plea 11(c)(1), the reviewing court's included level of education as a determining factor whether a defendant understood the nature of the charge against him. **UNITED STATES VS. PUNCH**, 709 F2d 889 (5th Cir. 1983).

B.                    **CONSEQUENCES OF THE GUILTY PLEA**

Gonzalez further contends that his guilty plea must be vacated because this Court failed to adequately explain the consequences of his guilty plea in violation of Rule 11(c)(1).

The record of the underlying colloquy will show that this Court conducted the personal advice requirement of Rule 11(c)(1) in a manner designed to inhibit Gonzalez from any understanding of which charge carries which penalty. The record demonstrates that this Court gave a confused adminition of the penalties, starting from Count 2 of the indictment, this Court rammed through Count 4 stating various penalties without ascertaining if Gonzalez understood the charge to which each penalty applies.

For Gonzalez's plea to be voluntary he has to have understood that the charges to which he pleaded guilty will subject him to a mandatory minimum sentence. Such minimum sentence can only be determined from factual basis supporting the guilty plea, especially, in drug cases where quantity of the drug involved shapes the sentence to be imposed.

In the instant case, the record reflects that this Court, while failing to correctly state the charges exacerbated the problem by combining penalties for the two charges under one

**8.**

lump advice without first eliciting Gonzalez's understanding of the penalty associated with Count 2 of the indictment. See **UNITED STATES VS. GUERRA**, 94 f3d 989 (5th Cir. 1996); **UNITED STATES VS. PIERCE**, 893 F2d 669 (5th Cir. 1990) (incorrectly informing the defendant as to the maximum penalty, either understating it or overstating it, is ground for remand). as clearly shown in the record, this Court's failure to individualize and question Gonzalez on the penalty applicable and question Gonzalez on the penalty applicable to each charge he pleaded guilty amount to total failure to inform the defendant of the consequences of his guilty plea. see **UNITED STATES VS. GOINS**, 51 F3d 400 (4th Cir. 1995).

C.          THE MONEY LAUNDERING CHARGE

In an attempt to state the charge in Count 4, the court misinformed Gonzalez that it was **"use of illicit money" (Plea at p. 12)**. Throughout the hearing, this Court failed to make any mention of money laundering or the elements necessary to convict Gonzalez of the charge. The record further shows that Gonzalez's answer to the court's penalty advice were **"uh huh"**. See **UNITED STATES VS. HOURIHAN**, (11th Cir. 1991).

Rule 11 Fed. R. Crim. P. requires district court to demonstrates on the record, that the defendant understands the meaning of the charge to which his plea was offered. **UNITED STATES VS. KAMER**, 781 F2d 1380, 1385 (9th Cir.) cert. denied 479 U.S. 819, 107 S.Ct. 82, 93 L.Ed.2d 35 (1986). In the instant case, advising Gonzalez that he was pleading guilty to **"use of illicit money"** does not explain to Gonzalez that he was pleading

**9.**

guilty to money laundering. See **HENDERSON VS. MORGAN**, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976) (an admission by the respondent that he killed Mrs. Francisco does not necessarily also admit that he was guilty of second degree murder) **Id.** at **115.** For Gonzalez's plea to be voluntary, the record of the plea hearing must show that the nature of the charge was adequately explained to him including the elements necessary to convict him of the crime. **McCARTHY VS. UNITED STATES**, 349 U.S. 459, 466, 89 S.Ct. 1166, 1170, 20 L.Ed.2d 418 (1969).

The record of the underlying case shows that Gonzalez did not understand the nature of the charge against him as well as the consequences of his guilty plea. His plea of guilty must be vacated to allow him to plead anew.

### WHETHER FACTUAL BASIS EXIST ON THE RECORD TO ACCEPT GONZALEZ'S GUILTY PLEA TO 576 KILOGRAMS OF COCAINE

Gonzalez's guilty plea must be vacated because this Court failed to satisfy the second core objective of Rule 11 by failing to ensure that an adequate factual basis supported his guilty plea in complaince with Rule 11(F). Section (F) of Rule 11 provides: **"Notwithstanding the acceptance of a plea of guilty the Court should not enter a judgment upon such plea**

without making such inquiry as shall satisfy it that there is a factual basis for the plea". Fed. R.Crim. P. 11(F). UNITED STATES VS. JOHNSON, 194 F3d 657, 659 (5th Cir. 1999). This factual basis must appear in the record and must sufficiently be specific to allow the Court to determine that the defendant's conduct was **"within the ambit of that defined as criminal"**. See UNITED STATES VS. OBERSKI, 734 F2d 1030, 1031 (5th Cir. 1984).

There is no specific dialogue that must take place in order to comply with Rule 11(F)'s requirement that the district court satisfy itself regarding the factual basis for defendant's guilty plea. The Court needs not evaluate evidence but must **"assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty"**. See MATTHEW VS. JOHNSON, 201 F3d 353, 368 (5th Cir. 2000), quoting UNITED STATES VS. MAHER, 108 F3d 1513, 1524 (2nd Cir. 1992). That Gonzalez pleaded guilty, a legal conclusion on his part, ostensibly admitting to discrete facts supporting the charge against him, is not itself sufficient to support his guilty plea. UNITED STATES VS. MAREK, 238 F3d 310, 314 (5th Cir. 2001). Subsection (f) of rule 11 requires this Court to determine that the factual conduct to which Gonzalez admits is sufficient as a matter of law, to constitute a violation of the Statute. See UNITED STATES VS. BRIGGS, 939 F2d 222, 227-28 (5th Cir. 1991).

It is this requirement of Subsection (f) that this Court failed to comply with. **First,** the requirement that the Court must state on the record, the specific factual basis for the

11.

plea is silent from the record of the plea colloquy. **Second,** the government, sensing the inadequacy of the factual basis for the plea, tried for the second time, to introduce the none admissible evidence which the government knew was foreclosed. The apparent mistake by this Court was the reliance on facts from the botched trial. At the plea colloquy, this Court and indeed Gonzalez's counsel, failed to realize the status of the 576 kgs of cocaine which was the primary element of the charge most important to the government. However, rather than reminding the Court of the danger of importing factual basis from the trial, the govt. compounded this risk by assuring the Court of its preparedness to continue its claim that Gonzalez was present at the New York warehouse where it claimed 576 kgs of cocaine were delivered.

Gonzalez's guilty plea must be vacated for lack of factual basis. Count 2 of the indictment was based on possession of 576 kgs of cocaine in either New York or Houston, Texas. At the trial, this Court found that the claimed drug did not exist. The lead case agent, Officer Leo Silva, was questioned about by the prosecutor. the following dialogue took place:

> Q. Information has been provided to you initially involving a load that was delivered to New York City, actually, involving 576 keys. How is it that you developed that information and what is it that you know about that particular--was there actually a seizure like we did here in Harlingen? The 850 keys?
>
> A. There was no seizure of 576 keys, no.
>
> Q. That delivery was made and you all, meaning the enforcement, did not apprehend that amount?
>
> A. No.
>
> Q. It got by?

> A.    We were told by that -- back in March 1992, by
>        Victor Zamora, who told us that Marcos Gonzales --
>
> MR. DE LA FUENTE: Your Honor, I am going to
> object to all this testimony. It is hearsay.
>
> THE COURT: Sustained.

This Court sustained objection and inadmissibility of this hearsay. This Court also relies on facts from the trial to form the factual basis for the guilty. However, a hearsay information objected to and sustained by this Court at trial, cannot be used as factual basis for Gonzalez's guilty plea. To hold otherwise will constitute inconsistency on the part the Court. See **UNITED STATES VS. MENDEL**, 746 F2d 155 (2nd Cir. 1984) cert. denied, 469 U.S. 1213, 105 S.Ct. 1184, 84 L.Ed.2d 331 (1985) (The Judge committed error by first stating that he would not believe a witness and thwen basing his conviction on the testimony of that witness). **UNITED STATES VS. MacDOUGALL**, 790 F2d 1135 (4th Cir. 1986) (If was error for the Court to first say that double jeopardy was a jury question , and then after the defendant had admitted to the guilt in his opening statement, to change its mind and overrule the double jeopardy question, leaving him defendless).

Furthermore, assuming there is any importable factual basis from the botched trial record, it could not form the factual basis for the plea because the factual basis, if any, was prepared through the assistance of this Court. For instance, on direct examination by the prosecutor, the testifying officer, Leo Silva, unequivocally stated that the abbreviation he saw on the alleged seized notes were for **"Pounds"** . See **Trial Tr. at p. 211, 225.** But on cross-examination, when the defense counsel

13.

questioned Officer Silva concerning the **"Pound"** abbreviation he previously testified, the Court interrupted and changed it to kilo. Officer Silva played along with the Court's version and even committed an egregious and reversible error by inserting the abbreviation **"KGS"**, an abbreviated he claimed to know very well. See **Trial Tr. at p. 274.**

Gonzalez asserts that was his case resolved by trial, the appellate court would have reversed on the basis of lack of evidence. that Officer Silva played along with this Court's **"Kilo"** comment demonstrates that this case was based on fabrication of evidence intended to achieve a  wrong convictions. The integrity of the judicial system eroded further because the prosecutor, an officer of the court, stood still knowing that Officer Silva was presenting false testimony when he adopted the **"kilo"** version injected by the Court. A reasonable and honest prosecutor would have used a **"redirect"** to correct this obvious and cankerworm error.

Simply put, no factual basis exists in the record of the suspended trial which can pass muster as factual basis to accept Marcos Gonzalez's guilty plea to Count 2 of the indictment. His conviction on Count 2 must be reversed.

**WHETHER FACTUAL BASIS EXISTS ON THE
RECORD TO ACCEPT GONZALEZ'S GUILTY
PLEA TO MONEY LAUNDERING**

Gonzalez pleaded guilty to money laundering arising as stated by the government from a conspiracy to possess with intent to distribute cocaine. At the plea hearing the only dialogue between this Court and Gonzalez about the charge was:

14.

THE COURT: You notice that they say that you engaged
in a financial transaction in the amount
of $11,200. And that $11,200 represents
proceed from unlawful activity. The unlawful
activity being the drug situation.

THE DEFENDANT: Uh-huh

THE COURT: And you did all this and continued in the
unlawful activity that you had been engaged
in, which is dealing with drugs. Did you
notice that?

THE DEFENDANT: Yes, sir.

THE COURT: I find that you understand what you are
accused of in both of those counts, 2 and 4,
that you are competent to assist in the
defense of your case, and you are competent
to being arraigned and tried in your case.

This dialogue was followed by a litany of other
admonishments and a reading of the charge by the prosecutor. This
Court made no attempt to explain the elements of the charge to
Gonzalez. The record reveals that not only that this Court failed
to inform Gonzalez of the nature of the charge against him,
**UNITED STATES VS. McCARTHY**, 394 U.S. 459, 89 S.Ct. 1166, 22
L.Ed.2d 418 (1969), there is no factual basis to accept the
guilty plea. To convict Gonzalez of money laundering, the
government must prove, pursuant to U.S.C. §1956(a)(1)(A)&(2) the
Gonzalez conducted or attempted to conduct a financial
transaction that he knew involved the proceed of unlawful
activity. **UNITED STATES VS. SPRICK**, 233 F3d 845 (5th Cir. 2000).

According to the plea agreement and transcript of the plea
colloquy, the theory of the government's prosecution, at least,
by description of the Court, was the use of illicit money. The
illicit money was the amount of $11,200 as charged in the
indictment, plea agreement and plea colloquy. When asked for

15.

evidence of this charge, the government elected to attempt a description of its evidence for Count 2 of the indictment instead. Apparently, no evidence exists to support the money laundering prosecution based on the alleged $11,200 charged in Count 4.

As argued earlier in this memorandum, Rule 11(f), Fed. R. Crim. P. states: **"Notwithstanding the acceptance of a plea of guilty, the Court should not enter judgement upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea. <u>UNITED STATES VS. MAREK</u>, 238 F3d 310, 315 (5th Cir. 2001)"**. The record of the plea colloquy reveals that although in violation of Rule 11(f), this Court stated no specific fact on the record to support Gonzalez's plea to the $11,200 money laundering charge. However, this Court stated that it will adopt the proceedings of the suspended trial to draw its fact.

Gonzalez contends that the adoption of the trial record is not without a short fall. The charge to which the guilty plea was tendered was limited by the charging instrument, to $11,200. A review of the trial transcript will reveal that Officer Silva gathered that one, Sandra Avila-Vasquez rented a warehouse in Harlingen, Texas. That Sandra was found to be a sister-in-law of Marcos Gonzalez. That Officer Silva debriefed a convicted felon, Victor Zamora, who wanted to reduce his prison sentence by providing information about drug traffickers. That Victor Zamora has mentioned, among other individuals, the name, Marcos Gonzalez as a drug runner. That Zamora informed Officer Silva concerning the warehouse rented by Sandra Avila-Vasquez.

16.

The gist of Rule 11(f) is the conduct of the defendant which constitutes the crime he admits. Other then hearsay information of Victor Zamora to officer Silva, there is nothing in the record to indicate any nexus between Marcos Gonzalez, the $11,200 and the renting of the warehouse. Of course, the charge in Count 4 alleged that Marcos Gonzalez was aided and abetted by others to commit the money laundering crime. Missing from the record is evidence of Gonzalez's involvement in the $11,200 rental fee. See **UNITED STATES VS. SCHMALZRIED**, 152 F3d 354 (5th cir. 1998); **UNITED STATES VS. BRIGGS**, supra.

According to the testimony of officer Silva, he received information in March 1992, about an individual (Marcos Gonzalez) that transports narcotics to New York. **Trial Tr. at p. 260.** He was also told about a warehouse in Harlingen under the name of Benito Gonzalez. He was only told by the informant that marcos Gonzalez was involved in drug trafficking, he question Victor Zamora about the Harligen warehouse but he did not know about it. He only knew that there was a warehouse in New York. **Trial Tr. at p. 260.** Officer Silva later seized cocaine from the Harlingen warehouse. When asked about Gonzalez's involement in the Harlingen warehouse, Officer Silva testified that he never saw Marcos Gonzalez at the Harlingen warehouse, never got a picture of him. **Trial Tr. at p. 262-264.** asked if there is anything that connects Marcos Gonzalez to the cocaine seized from the Harlingen warehouse, the Officer unequivocally stated that **"nothing connects Gonzalez to the Cocaine"**. **Trial Tr. at p. 265.**

17.

Therefore, the facts supporting the money laundering if any, has no nexus to Marcos Gonzalez. To convict Marcos Gonzalez of the $11,200 money laundering, the fact will show that he conducted or attempted to conduct a financial transaction, (2) which he knew involved the proceeds of unlawful activity, and (3) which he knew was designed to conceal or disguise the nature, location, source, ownership or control of the proceeds of the unlawful activity. **UNITED STATES VS. THREADGILL**, 172 F3d 357 (5th Cir. 1999). According to the record, Benito Gonzalez and in part, Sandra Avila conducted the transaction in question. Officer Silva's testimony cleared Marcos gonzalez of any involvement in both the warehouse and the $11,200. Accordingly, Marcos Gonzalez's guilty plea to Count 4 of the indictment must be reversed.

18.

## WHETHER GONZALEZ WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED HIM BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION

Marcos Gonzalez contends that a claim of ineffective assistance of counsel should be brought in a collateral proceed under Title 28 U.S.C. §2255 Motion because appellate records often lack sufficient evidentiary basis as to what counsel did, and why it was done and what if any prejudice resulted therefrom. Constitutional claims may be raised in collateral proceeding even if the defendant failed to pursue them on direct appeal. **DAVIS VS. UNITED STATES**, 417 U.S. 333, 345, 94 S.Ct. 2298, 2304 n. 15, 41 L.Ed.2d 109 (1974).

The Sixth Amendment provides that in all criminal prosecutions, the accused shall enjoy the right to have assistance of counsel for his defense. **U.S. Constitution Amendment VI.** In **JOHNSON VS. ZERBST**, 304 U.S. 458, 462, 58 S.Ct. 1019, 1022, 82 L.Ed. 146 (1938), the Supreme Court said **"the assistance of counsel is one of the safeguard of the Sixth Amendment deemed necessary to insure fundamental human rights of liberty....The Sixth Amendment stands a constant admonition that if the constitutional safeguards it provides be lost, justice will still not be alone".** In **POWELL VS. ALABAMA**, 287 U.S. 45, 69, 53 S.Ct. 55, 64 77 L.Ed. 158 (1932), Justice Sutherland described the importance of these rights, **"that even the intelligent and educated layman has small and sometimes no skill in the science of law, if charged with crime he is incapable, generally, of determining for himself whether the indictment is**

19.

good or bad, he requires the guiding hands of counsel at every step of the proceedings against him".

The right to counsel guaranteed by the Constitution, however, mean more than just the opportunity to be accompanied by a person privileged to practice law. **STRICKLAND VS. WASHINGTON**, 466 U.S. 668 (1984) (that a person who happens to be a lawyer is present at trial alongside the accused...is not enough to satisfy the constitutional command); **POWELL VS. ALABAMA**, **289 U.S. at 58** (indigent defendants provided with unprepared and pro forma lawyers **"were not accorded the right to counsel in any substantial sense"**. Thus, an accused is entitled to be assisted by an attorney whether retained or appointed who play the necessary to insure that the trial is fair. **Strickland, 466 U.S. at 685.** In other words, the assistance which a defendant is entitled must be effective, unhindered by the state or counsel's constitutional deficient performance. In **TUCKER VS. DAY**, 969 F2d 155, 159 (5th Cir. 1992), the Court held that **"an attorney who provides his client with no assistance at sentencing did not satisfactorily discharge his Sixth Amendment responsibilities"**.

Claims of ineffective assistance are generally governed by **STRICKLAND VS. WASHINGTON**, which sets forth a two part test. **First,** the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment. **Second,** the defendant must show that the deficient performance prejudiced his defense. This requires a showing that counsel's errors were so serious as to

20.

deprive a defendant of a trial, a trial whose result is reliable. Unless the defendant makes both showing, it cannot be said that the conviction resulted from a breakdown in adversary process that renders the result unreliable. **Strickland,** 466 U.S. at 687, 104 S. Ct. at 2064.

In the instant case, Marcos Gonzalez pleaded guilty to counts 2 and 4 of the indictment which alleged possession with intent to distribute cocaine and money laundering involving $11,200 said to be rental fee paid by **Benito Gonzalez** to maintain the Harligen Warehouse. According to the record developed during the trial, Marcos Gonzalez was not connected with the warehouse and neither was any evidence introduced to prove that he knew about the existence of the warehouse. Officer Silva who headed the investigation testified that he had no evidence connecting Marcos Gonzalez to the said warehouse. Had counsel prepared himself for trial and research the law relative to money laundering, he would not have and could not advice Gonzalez to plead guilty to the charge of money laundering involving the Harligen warehouse.

It has been established that "certainly, an attorney cannot render reasonably effective assistance unless he has appointed himself with the law and facts of the case. See **ROBERT V. DUTTON,** 368 F.2d 465(5th Cir. 1966). Adversary system of this country is designed to serve the end of justice; it cannot do that unless the accused's counsel presents an intelligent and knowledgeable defense. Such a defense requires investigation and preparation. Gonzalez's counsel did not adequately prepare himself for the defense of his client. Although counsel stated that he reviewed

-21-

the discovery materials maintained by the government, counsel could not point to one evidence in the discovery which linked his client to any of the charges he advised him to plead guilty. See **WOODARD V. COLLINS,** 898 F.2d 1027(5th Cir. 1990). The court in **Woodard** held that " a remand was required to determine whether the petitioner was prejudiced by his counsel's failure to investigate a crime to which, upon counsel's advice, petitioner pleaded guilty. The court found that the first prong of **Strickland** has be satisfied but found that it could not ascertain from the record whether the second prong of **Strickland** has been met. First, a court generally must strongly presume that counsel has exercised reasonably professional conduct. **Strickland,** 466 U.S. at 690, 104 S.Ct. at 2065. No such presumption, however, is warranted when a lawyer advises his client to plea bargain to an offense which the lawyer has not investigated. Such conduct is always unreasonable. **Id. 1029.** Second, the court must determine whether **Woodard** suffered prejudice. **Woodard** can show prejudice if " there is a reasonable probability that, but for, counsel's unprofessional errors, he would not have pleaded guilty but would have insisted on going to trial. **HILL V. LOCHART,** 474 U.S. 52, 88 L.ed.2d 203, 106 S. Ct. 366(1985).

In the instant case, the record will show that Gonzalez never considered taking a guilty plea but insisted on taking the case to the jury for trial. The brawl between Gonzalez and counsel, Oscar De La Fuente, over resolution of the matter was obvious that counsel complained to the court of his reluctance to take the case to trial. **Trial Tr. at p. 3-4.** Again, counsel's decision to plea bargain was solely based on his review of the discovery material

-22-

kept by the government. Indeed, counsel also revealed to the court that he has started plea negotiation with the government prior to informing Gonzalez of such action. As this court stated in the record, the decision to plead guilty should be made by gonzalez independent of counsel's recommendation. **Trial Tr. at p. 4.**

As Gonzalez will point to this court, the government's discovery file did not contain any evidence linking him to the Harlingen warehouse where officer Silva discovered cocaine and arrested the individuals involved with the warehouse. Officer Silva testified that he had no evidence linking Gonzalez to the warehouse and neither did his surveillance show the presence of Marcos Gonzalez in the warehouse at any time during the surveillance. Counsel was aware that it was the Harlingen warehouse and its activities that formed the evidence used for the money laundering charge in count 4 of the indictment. Counsel also failed to investigate the fact of the New York warehouse. At the trial, it was discovered that the government's evidence consists of a third party hearsay which it attempted to justify the charge in count 2. Accordingly, this court sustained objection to admissibility of the 576 kilogram hearsay theory. In all, were Marcos Gonzalez succeeded in going to trial, the entire evidence would have been circumstantial and nothing more.

That Gonzalez entered a guilty plea on the third day of his trial, is a result of coercion from his counsel, Oscar De La Fuente. See **U.S. V. SANCHEZ-BARRETO,** 93 F.3d 17 (1st Cir. 1996). De La Fuente coerced Gonzalez to plead guilty in order to conceal his unpreparedness for trial, which constitutes ineffective assistance.

-23-

Furthermore, due to counsel's lack of preparation for trial, counsel declared Marcos Gonzalez guilty of the charged offense while at the same time informing this court that he was ready for trial. ( I am prepared and I have discussed this with Mr. Gonzalez). In **UNITED STATES V. SWANSON,** 943 F.2d 1070 (9th Cir. 1991), the court held that defendant was denied the effective assistance of counsel where his defense counsel conceded that there was no reasonable doubt concerning the only issue in dispute and thereby relieving the government of its burden of proof. Mr. Oscar De La Fuente relieved the government of its burden of proof when, at the commencement of the trial, he announced that "Gonzalez should accept responsibility for the crime. Indeed, he further stated: **In my opinion, I believe the evidence will show that he is guilty of the allegations.** (Trial Tr. at p. 3)

As the record demonstrates, Mr. De La Fuente filed a motion for continuance to enable him review the case file. This court denied the motion without giving him the opportunity to be familiar with the facts of the case. That Mr. De La Fuente announced to the court that he was prepared to try the case was a false representation which constitutes ineffective assistance of counsel.

Courts have to this point held that legal and factual preparations are very significant in criminal representations. It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to guilt and degree of guilt or penalty. The duty to investigate exists regardless of the accused's admission or statement to the trier of facts constituting his guilt or stated desire to plead guilty. [ABA Standard, Section 4.1].

In the instant case, it is clear from a review of the record that it was Marcos Gonzalez, who refused to accept his counsel's concession that he was guilty as charged.

As noted above, once a defendant has shown that counsel's ineffectiveness worked to his actual and substantial disadvantage, the government must prove that counsel's ineffectiveness was harmless beyond a reasonable doubt. **WASHINGTON V. STRICKLAND,** 693 F.2d 1243, 1258(5th Cir. 1982)(en banc).

The matters within and without the record of this case clearly demonstrate that counsel's performance, when placed in the balance of the entire record, can only be led to the conclusion that his failures were grossly disproportionate to the positive aspect of his representation. Accordingly, Marcos Gonzalez's guilty plea must be vacated.

### CONCLUSION

Marcos Gozalez has set forth colorable claims which are cognizable under 28 U.S.C. § 2255, and respectfully relies on the grounds of errors set forth within the body of each argument. Marcos Gonzalez's guilty plea was not voluntary. He did not receive the effective assistance of counsel guaranteed him by the constitution. Therefore, Gonzalez requests this court to conduct an evidentiary hearing in order to further develop the record as it relates to the voluntariness of the guilty plea and the ineffective assistance of counsel claims. The court should grant any and all further relief the court finds equitable, proper and fair.

Repectfully submitted

Marcos R. Gonzaly
Marcos Gonzalez Pro/Se

-25-

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing motions have on this the 28th day of May, 2002, been served on the United States attorney by placing same in the Institution's legal mail-box, Postage prepaid for forwarding to the following address:

                Office of the  U.S. Attorney
                1036 E. Levee Street
                Brownsville, Texas 78520

Marcos Gonzalez